UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JORGE A. MAISONET,       ) | |
|       ) | |
|      *Plaintiff,*      ) | CIVIL ACTION |
|       ) | NO.: |
| v.       ) | |
|       ) | |
| MASSACHUSETTS COLLEGE OF ART   ) | |
| AND DESIGN and CATHERINE FABIO,   ) | |
|       ) | |
|      *Defendants.*      ) | |

## VERIFIED COMPLAINT
## [WITH REQUEST FOR INJUNCTIVE RELIEF]

COMES NOW Plaintiff Jorge A. Maisonet ("Plaintiff"), and for his Verified Complaint against Defendants Massachusetts College of Art and Design ("MassArt") and Catherine Fabio ("Fabio") (collectively referred to as "Defendants"), states as follows:

### PARTIES

1.    Plaintiff is an individual residing in Malden, Middlesex County, Massachusetts 02148.

2.    Defendant MassArt is a Massachusetts public institution of higher learning located at 621 Huntington Avenue, Boston, Suffolk County, Massachusetts 02115.

3.    Defendant Fabio is employed as MassArt's "learning specialist," and, on information and belief, is an individual residing in Massachusetts.

### FACTS

4.    In 2003, Plaintiff was diagnosed with Attention Deficit Disorder ("ADD") by a doctor practicing psychiatry in Atlanta, Georgia.

5.      ADD is a learning disorder causing learning difficulties, including inattention, difficulty focusing, difficulty organizing and planning, hyperactivity and/or impulsivity.

6.      The United States Congress recognizes that persons with ADD are stigmatized and discriminated against on the basis of their disability.

7.      Federal and Massachusetts law recognizes that persons suffering from ADD are part of a class of persons protected from discrimination based on disability while attending public institutions of higher education, including MassArt.

8.      In 2006, Plaintiff's doctor completed and signed a disability request form for Plaintiff to receive learning disability accommodations while he attended Georgia Perimeter College ("GPC") in Atlanta, Georgia.

9.      While pursuing his associate's degree, GPC provided Plaintiff with learning disability accommodations, including extra time on exams and assignments and books on tape/digital format.  In 2006, Plaintiff graduated from GPC with an Associate's Degree in Science/Arts.

10.     At all times relevant hereto, MassArt has operated as a Massachusetts public institution of higher learning and receives United States and Massachusetts government monetary funding to operate as a public college.

11.     In 2007, Plaintiff applied to and was accepted as a transfer student into MassArt's undergraduate Industrial Design program.  Since the Fall of 2007, Plaintiff has been enrolled continuously as a full-time student at MassArt.

12.     In the Fall of 2007, Defendant assigned Plaintiff a designated electronic mail ("email") address.

13.     During the Fall 2007 semester, Plaintiff began to have difficulties with his coursework.

2

14.     One of Plaintiff's Industrial Design courses during the Fall 2007 semester was taught by professor James Read ("Read").   Plaintiff self-identified his ADD disability to Read and explained that he was having difficulty in the professor's class.

15.     Plaintiff requested assistance from Read to improve in the class.   Read failed and refused to provide assistance to Plaintiff.   Also, Read failed to refer Plaintiff to the school's disability services department.   Instead, Read reprimanded and berated Plaintiff multiple times, including in front of the class, for being "slow" and falling behind in his coursework.

16.     On information and belief, MassArt did not provide Read and other faculty and staff with periodic and continuing training on teaching and assisting students with ADD and other learning disabilities.

17.     On or about October 22, 2007, Plaintiff sent a letter to Johanna Branson ("Branson"), MassArt's Vice-President of Academic Affairs.   Plaintiff's letter set forth a complaint against Read for discrimination against Plaintiff on the basis of Plaintiff's disability.

18.     Branson never responded in writing to Plaintiff's complaint against Read.

19.     In or about October of 2007, Plaintiff met with Mercedes Evans ("Evans"), Director of MassArt's Office of Civil Rights Compliance and Diversity, and requested disability accommodations for Plaintiff's Fall 2007 semester classes, including the course taught by Read.

20.     During their October 2007 meeting, Evans told Plaintiff that, even if she approved Plaintiff's request for disability accommodations, professors would be skeptical of his request because the semester had already started.

21.     Evans discouraged Plaintiff from obtaining disability accommodations from MassArt.

22.     MassArt did not provide Plaintiff with any disability accommodations during the Fall semester of 2007.

23.     Near the end of the Fall 2007 semester, Plaintiff met with his assigned academic advisor, Industrial Design professor Judith Anderson ("Anderson"), and requested incomplete grades for his first semester at MassArt.

24.     MassArt's Grading System states that an "Incomplete" grade is "[a] temporary designation indicating that at least 80% of the course requirements have been met and that the remaining course requirements are expected to be completed, and a permanent designation issued by the subsequent mid-semester."

25.     Plaintiff had completed 80% or more of his coursework for his Fall 2007 classes, and requested from Anderson additional time to complete his coursework due to his learning disability.

26.     Anderson denied Plaintiff's request for incomplete grades and additional time to complete his Fall 2007 courses and Plaintiff received failing grades in all of his Fall 2007 classes, including classes taught by Read and Anderson.

27.     For the Spring 2008 semester, Plaintiff was registered to take an Industrial Design elective course taught by Anderson.  After having Plaintiff attend the first day of class, Anderson told Plaintiff that he could not take the course because he was too slow, did not work hard enough and claimed the course had prerequisite course requirements.   She suggested that Plaintiff transfer to another college.  Anderson did not allow Plaintiff to take the course even though no prerequisite courses were required to take the course.

4

28.     On or about April 28, 2008, Plaintiff met with Evans and further requested learning disability accommodations for his classes.  Specifically, Plaintiff requested audio and/or digital books, extra time on assignments and tests, and access to a tutor.

29.     On April 28, 2008, Plaintiff provided Evans with a completed "MassArt ADA Voluntary Request Form" ("ADA Request Form") and the GPC disability request form completed by his doctor.

30.     On April 28, 2008, Evans accepted Plaintiff's disability documentation and approved Plaintiff's request for ADD disability accommodations.

31.     On April 28, 2008, Evans instructed Plaintiff to meet with Jean Wallace ("Wallace"), a MassArt Academic Advisor, who would issue a written memorandum, referred to by MassArt as an "accommodation letter," addressed to Plaintiff's professors and informing the professors that Plaintiff had a disability, and listing the specific accommodations to provide to Plaintiff.

32.     On April 28, 2008, Plaintiff met with Wallace.  While Plaintiff waited in her office, Wallace drafted the accommodation letter on her computer, printed copies of the letter, and gave the copies to Plaintiff to sign and give to each his professors.  Each professor was to sign and return the form to Wallace.

33.     The accommodation letter stated that Plaintiff "requires classroom/testing accommodations for a documented disability" and that the college was mandated by its own policies and federal disability law to provide Plaintiff with reasonable learning disability accommodations."  The letter specified for the professors to provide Plaintiff with accommodations of extra time on assignments and tests.

34.    Plaintiff signed the letter and provided copies to each of his professors.  He received extra time on tests and assignments for part of the Spring 2008 semester.

35.    Upon Plaintiff's request, Wallace again drafted and issued an accommodation letter for Plaintiff's Summer 2008 semester.

36.    Per Wallace's instructions, Plaintiff picked up the accommodation letter in person from Wallace, signed the letter, provided copies to his professors and received extra time on tests and assignments during the Summer 2008 semester.

37.    During the summer of 2008, Wallace orally informed Plaintiff that she would not be able to issue an accommodation letter for Plaintiff's Fall 2008 semester courses because MassArt was hiring Defendant Fabio as the school's learning specialist, and that Fabio would issue the accommodation letter for Plaintiff.  Wallace instructed Plaintiff to contact Fabio shortly before the Fall 2008 semester began.

38.    In August of 2008, Plaintiff telephoned Fabio regarding obtaining ADD accommodations for the Fall 2008 semester.  Fabio stated to Plaintiff that she was very busy and could not meet with Plaintiff until September 3, 2008, the day prior to classes starting.

39.    On September 3, 2008, Plaintiff met with Fabio at her office and discussed his disability and request for accommodations.  Fabio stated that she could not yet draft accommodation letters to Plaintiff's professors because she was waiting for Plaintiff's records to arrive from MassArt's health services department.  Fabio requested Plaintiff to return to her office on September 10, 2008 to pick up the accommodation letters.

40.    On September 10, 2008, Plaintiff returned to Fabio's office and met with Fabio.  Fabio stated to Plaintiff that she had received and reviewed Plaintiff's records and that she would draft

6

accommodation letters to his professors for the Fall 2008 semester. Fabio asked and Plaintiff provided her with the names of his professors for Fabio to address the letters. Fabio asked Plaintiff to return to her office on September 11, 2008 to pick up the letters.

41.     On September 11, 2008, Plaintiff returned to Fabio's office and met with Fabio. Fabio claimed to Plaintiff that she had finished the accommodation letters but could not open a computer file wherein the letters were contained. She further claimed to Plaintiff that her computer had been "giving her problems" that day. Fabio requested that Plaintiff return on September 12, 2008 to pick up the letters.

42.     On September 12, 2008, Plaintiff returned to Fabio's office and again met with Fabio. This time, Fabio claimed to Plaintiff that she could not provide the accommodation letters because her computer printer was not working.

43.     On September 12, 2008, Plaintiff requested that Fabio provide the accommodation letters directly to his professors. Fabio told Plaintiff that he was required to sign the letters and bring them in-hand to his professors.

44.     On September 12, 2008, Plaintiff requested that Fabio email or mail the accommodation letters to him. Fabio refused, claiming that she was not allowed to email or mail the letters to Plaintiff because the information in the letters was "sensitive."

45.     At all times relevant, MassArt's "Electronic Mail, Internet and Telecommunications/Voice Mail Policy" ("Email Policy") states that: "Electronic mail, Internet access, Telecommunications/Voice mail and other electronic media, and equipment are business tools that are provided by Massachusetts College of Art to employees and students to facilitate timely and efficient conduct of business."

7

46.     MassArt's Email Policy further states that: "Appropriate use of Massachusetts College of Art's electronic mail . . . includes . . . communication, and official work of the offices, units, recognized student and campus organizations, and agencies of the College."

47.     On September 12, 2008, Fabio asked Plaintiff to come back to her office another day in September to obtain the letters, the specific date of which Plaintiff cannot recall.

48.     On the date in September 2008 that Fabio specified for Plaintiff to come back to her office, Plaintiff went to her office and waited.  Fabio never showed up.  Later that day, when Plaintiff returned home, he received a telephone call from Fabio stating that she did not meet with him because she had to pick up her sick daughter at school.  She stated that Plaintiff should "stop by" her office to pick up the accommodation letters on another day.

49.     On multiple occasions in September and October of 2008, Plaintiff went to Fabio's office and attempted to pick up the letters.  Each time, Fabio either had an excuse for not providing the letters or was not present in her office.

50.     One day in October of 2008, Plaintiff again went to Fabio's office.  She was meeting with another student.  Fabio told Plaintiff to come back another day because she was busy with the other student.  Fabio told Plaintiff to come back on October 24, 2008.

51.     On or about October 24, 2008, Plaintiff telephoned Fabio to reschedule their October 24, 2008 meeting because Plaintiff was in the hospital for surgery.  Plaintiff rescheduled an appointment with Fabio for October 30, 2008.

52.     On October 30, 2008, Plaintiff went to Fabio's office.  Fabio did not show up.  When Plaintiff returned home, he received a voicemail message from Fabio apologizing for not meeting him that morning and asking Plaintiff to return to school that afternoon to pick up the

8

accommodation letters.  When he arrived back at her office that afternoon, Fabio was not present again.

53.     Throughout the Fall 2008 semester, one of Plaintiff's classes was conducted in a school hallway due to lack of classroom space.  The educational setting was distracting and upsetting to Plaintiff because of his ADD.

54.     Fabio and MassArt did not provide Plaintiff with accommodation letters during the Fall 2008 semester.

55.     Fabio and MassArt did not provide Plaintiff with disability accommodations during the Fall 2008 semester.

56.     Fabio and MassArt discouraged Plaintiff from obtaining disability accommodations.

57.     According to MassArt's Vice President of Academic Advising, Daniel Szabo ("Szabo"), Fabio, on November 5, 2008, emailed Evans, Wallace, Szabo and other unknown persons three (3) accommodation letters Fabio purportedly prepared for Plaintiff's Fall 2008 courses.  Each so-called accommodation letter was dated September 10, 2008.

58.     At no time during the Fall 2008 semester, did Fabio or MassArt email or mail accommodation letters to Plaintiff or Plaintiff's Fall 2008 semester professors or email or mail Plaintiff correspondence regarding his Fall 2008 request for disability accommodations.

59.     In late December of 2008, Fabio sent Plaintiff a letter to his home via U.S. Mail.  In this correspondence, dated December 19, 2008, Fabio informed Plaintiff that, in order for Plaintiff to obtain disability accommodations for the Spring 2009 semester, Plaintiff "*must provide documentation of [his] reported disability*" (original emphasis).

9

60.     In her December 19, 2008 letter, Fabio makes no mention of Plaintiff's attempts to obtain Fall 2008 semester accommodation letters from Fabio or of Plaintiff not receiving disability accommodations during the Fall 2008 semester.

61.     In her December 19, 2008 letter, Fabio states that Plaintiff must provide MassArt with a "Massachusetts College of Art and Design Medical Questionnaire ("Medical Questionnaire"), completed in fully by a licensed clinician, within six months of the date of this letter, listing either a diagnosis and diagnostic code(s) or a statement that a disability is not present if a medical disability also exists."

62.     The MassArt six-page Medical Questionnaire states that: "[i]n order to be valid as documentation of a current disability, as defined by the ADA Amendments Act of 2008 (ADAAA), this form must be completed by a licensed clinician currently treating the student listed below, for the diagnosis identified in this document."

63.     The Medical Questionnaire further states that: "[t]his medical questionnaire is designed to assist the college in making determinations about the reasonableness and appropriateness of your patient's request.   The information you provide will serve as formal medical documentation, and as such, will remain confidential."

64.     MassArt's Medical Questionnaire asks the doctor or clinician completing the form to answer twenty-five (25) different questions about the student's disability, including, but not limited to requests for a diagnosis, diagnostic codes, methods used to make diagnosis, onset of the disability, the areas of the student's life that are most affected by the impairment (i.e., reading, writing, verbal communication), how substantial the disability affects the student's

ability to learn, whether medication has been provided as treatment and recommendations for future treatment of the disability.

65.    In addition to requesting the completion of the Medical Questionnaire, Fabio stated in her December 19, 2008 letter that Plaintiff must also provide: "[d]ocumentation, on official letterhead, from a psychiatrist or other licensed clinician specializing in Attention Deficit Disorder, outlining 1) history of ADD/ADHD; 2) assessment methods used to make the diagnosis; 3) evidence ruling out other disorders; and 4) a diagnostic code."

66.    In her December 19, 2008 letter, Fabio did not request that Plaintiff provide MassArt with a neuropsychological evaluation report or neuropsychological testing scores.

67.    Plaintiff received Fabio's December 19, 2008 correspondence on or about December 24, 2008. The first day of classes for the Spring 2009 semester started twenty-eight (28) days later on January 21, 2009.

68.    In January of 2009, Plaintiff met with Wallace and complained to her about not receiving accommodations from Fabio and MassArt during the Fall 2008 semester and about Fabio failing to provide accommodation letters to him during the Fall 2008 semester.

69.    In this January 2009 meeting with Wallace, Plaintiff requested disability accommodations for the Spring 2009 semester and objected to Fabio's request to provide Fabio and MassArt with "evidence ruling out other disorders." Wallace stated that she was unaware that such a request had been made by Fabio. She also stated that such a request made her "uncomfortable." Wallace instructed Plaintiff to speak with Evans about his complaints against Fabio and his objection to the additional documentation requirement of "evidence ruling out other disorders."

11

70.   Plaintiff met with Evans on February 13, 2009, and filed a formal written complaint against Fabio for disability discrimination.

71.   In his written complaint, Plaintiff documented Fabio's failure and refusal to provide accommodation letters, requested disability accommodations for the Spring 2009 semester, objected to the documentation request for "evidence ruling out other disorders," and requested a copy of the school's written policy on disability accommodations.

72.   In this February 13, 2009 meeting with Evans, Plaintiff requested that Fabio be reprimanded or terminated.  He also requested to work with someone other than Fabio to obtain disability accommodations for the Spring 2009 semester.  Evans stated to Plaintiff that she would investigate his complaint and provide a decision within fifteen (15) days.

73.   On February 17, 2009, Plaintiff received an email from Evans stating that "[t]he student accommodation process is located on the massart website at the following address: http://inside.massart.edu/x934.xml."

74.   The learning disability accommodation process located at the website address provided by Evans states that the process listed there was revised on December 18, 2008.

75.   The accommodations process on MassArt's website (as it reads as of the date of this Verified Complaint) states that the "most efficient way to self identify" a disability and obtain accommodations is to "secure appropriate documentation from your doctor/clinician.  To speed the process, please provide your clinician with the appropriate documentation guidelines required by Mass Art."

76.   MassArt's disability documentation requirements as set forth on MassArt's website do not specifically define "appropriate documentation" or list what specific documentation students

12

seeking to document ADD or other learning disabilities must provide to MassArt in order to receive disability accommodations.

77.    MassArt's disability documentation requirements as set forth on its website make no specific reference to any requirement for students to submit neuropsychological reports, neuropsychological evaluations, neuropsychological testing scores, sub-scores or documentation of "evidence ruling out other disorders."

78.    On February 19, 2009, Plaintiff sent Evans an email requesting information regarding the status of his request for accommodations for the Spring 2009 semester.

79.    On February 19, 2009, Evans sent Plaintiff an email instructing him to work with Fabio and to provide "the documentation [Fabio] needs to confirm [Plaintiff's] accommodations."

80.    On or about February 26, 2009, Plaintiff received in his physical student mailbox located in the basement of MassArt's Kenney building, a document of a printout from a book internet site offering for sale a book entitled: "The ADHD Fraud: How Psychiatry Makes 'Patients' of Normal Children."

81.    On information and belief, MassArt and/or Fabio put this document in Plaintiff's mailbox to harass and intimidate Plaintiff and to retaliate against him for being disabled, requesting disability accommodations and filing internal complaints of discrimination against Read, Fabio and MassArt.

82.    On March 19, 2009, Plaintiff met with Evans.  Plaintiff informed Evans that his doctor was completing the Medical Questionnaire and that he was prepared to submit the form to Evans, but that he did not want to have to submit the Medical Questionnaire to Fabio or have to work with Fabio to receive accommodations.  Also, Plaintiff again stated to Evans that he objected to

13

having to provide "evidence ruling out other disorders" and that other information Fabio was requesting was duplicative of information already requested in the Medical Questionnaire.

83.    On March 19, 2009, Evans refused Plaintiff's requests and directed Plaintiff to meet with Fabio and provide Fabio with the Medical Questionnaire and all of the documentation Fabio requested in her December 19, 2008 correspondence to Plaintiff.

84.    On March 19, 2009, Evans provided Plaintiff with an unsigned and undated copy of a document entitled "Statement of Refutation," allegedly drafted by Fabio.

85.    On April 10, 2009, Plaintiff emailed Evans and provided her with a summary of his complaint and of his discussions with Evans since February 13, 2009.  In this email, Plaintiff expressed his disappointment with Evans' handling of his complaint and stated to her that providing him with an unsigned copy of Fabio's alleged "Statement of Refutation" and instructing him to submit all requested documentation to Fabio was not an acceptable resolution.

86.    On April 13, 2009, some sixty (60) days after receiving Plaintiff's complaint against Fabio, Evans sent Plaintiff an email stating that she would be "sending [Plaintiff] a finding of facts in regard to [Plaintiff's] complaint with this office."

87.    By letter dated April 13, 2009, Evans mailed Plaintiff her "Statement of Findings and Recommendations."  In her "Statement of Findings and Recommendations," Evans concludes that Fabio wrote "reasonable accommodation letters for Mr. Maisonet for the spring semester [sic] on October 30, 2008.  Mr. Maisonet did not review or sign the letter as requested on October 31, 2008."

88.    Fabio claims in her "Statement of Refutation" that she drafted accommodation letters for Plaintiff on September 11, 2008.

14

89.    In her April 13, 2009 "Statement of Findings and Recommendations," Evans further states that Plaintiff should ". . . secure a neurophysiological [sic] report to document his disability.  Once the documentation is obtained, [Evans] will work with Mr. Maisonet and Ms. Fabio to obtain his letters for accommodation for the coming semesters."

90.    April 13, 2009 was the first time MassArt ever requested Plaintiff to submit a neuropsychological report.

91.    On May 29, 2009, Plaintiff emailed Evans and asked her how she came to the conclusions contained in her "Statement of Findings and Recommendations."  Evans never responded to Plaintiff's email.

92.    Evans' handling of Plaintiff's formal complaint of discrimination violated MassArt's Affirmative Action Complaint Procedure and Non-Discrimination and Diversity policy.

93.    On June 2 and 5, 2009, Plaintiff filed complaints of discrimination with Katherine Sloan ("Sloan"), MassArt's President, regarding Fabio and Evans' conduct and MassArt's new demand for Plaintiff to provide a neuropsychological report.  Sloan never responded to Plaintiff's complaints.

94.    In a June 3, 2009 letter, Evans informed Plaintiff that she considered the Plaintiff's complaint against Fabio closed.

95.    On June 16, 2009, Plaintiff met with Branson regarding the hostile and discriminatory treatment Plaintiff was being subjected to as a student with ADD.

96.    On June 16, 2009, Plaintiff complained to Branson that he was repeatedly discouraged from obtaining ADD accommodations and that MassArt refused and failed to provide him with learning disability accommodations for multiple semesters.

15

97.     Plaintiff further stated to Branson that he objected to having to provide a neuropsychological report or "evidence ruling out other disorders," in addition to submitting the completed six-page Medical Questionnaire.  Also, Plaintiff requested that someone other than Fabio receive and review the Medical Questionnaire and issue accommodation letters for his classes.

98.     On June 16, 2009, Branson informed Plaintiff that he was the only student Fabio and MassArt asked to provide "evidence ruling out other disorders."

99.     On June 25, 2009, Plaintiff received via U.S. Mail a June 23, 2009 award letter from MassArt granting him financial aid for the 2009-2010 school year.

100.    On June 27, 2009, Plaintiff received via U.S. Mail a June 25, 2009 letter from Branson discussing her June 16, 2009 meeting with Plaintiff.  In this letter, she stated that: "we are now requiring all students requesting disability-related accommodations to submit medical or neuropsychological documentation."

101.    On June 30, 2009, Plaintiff met with Wallace and Szabo.

102.    During the June 30, 2009 meeting, Szabo stated that Plaintiff was required to submit a neuropsychological report to MassArt in order to receive disability accommodations.  In a previous meeting with Plaintiff, Szabo suggested that Plaintiff transfer to a different college.

103.    During the June 30, 2009 meeting, Plaintiff objected to the request for a neuropsychological report as unnecessary and overly burdensome.   Specifically, Plaintiff objected to having to provide an entire neuropsychological report because such report contains private medical and family information not necessary for MassArt to further document and assess Plaintiff's disability.

104.    During the June 30, 2009 meeting, Plaintiff again objected to Fabio having any involvement in providing him with disability accommodations letters or in reviewing his medical and student files.   Plaintiff again offered to provide MassArt with the completed Medical Questionnaire from his doctor as long as Fabio would not be involved in his disability accommodations.

105.    On June 30, 2009, Plaintiff requested from Szabo to change Plaintiff's major from Industrial Design to Graphic Design and Photography.   Plaintiff explained to Szabo that his request to change his major was because of the discrimination and hostile environment Plaintiff experienced in the Industrial Design program and because of MassArt's failure to provide disability accommodations to Plaintiff.

106.    On June 30, 2009, Szabo and Wallace informed Plaintiff that he was being placed on academic probation for performing poorly in his classes during the Spring 2009 semester.

107.    MassArt did not provide Plaintiff with any learning disability accommodations during the Spring 2009 semester.

108.    On June 30, 2009, Szabo informed Plaintiff that he might not receive financial aid for the Fall 2009 semester.

109.    MassArt discriminated and retaliated against Plaintiff by placing Plaintiff on academic probation despite not providing Plaintiff with any disability accommodations during the Spring 2009 semester and by attempting to withhold financial aid.

110.    In a July 1, 2009 email, Szabo told Plaintiff that he must submit a neuropsychological report and meet with two additional college administrators in order to receive accommodations for the Fall 2009 semester.

17

111.    On July 20, 2009, Plaintiff sent Szabo a letter via certified mail along with a completed ADA Voluntary Request Form and the Medical Questionnaire completed by his doctor.

112.    In his July 20, 2009 certified letter to Szabo, Plaintiff objected to MassArt's requirement for submission of a neuropsychological report and MassArt's increasing, invasive and changing documentation requirements.  Also, Plaintiff requested disability accommodations for the Fall 2009 semester.  Further, Plaintiff objected to being placed on academic probation and requested that such designation be removed.

113.    Plaintiff stated in his July 20, 2009 letter to Szabo that Fabio was not to have access to his student or medical records or any involvement in his request for disability accommodations.

114.    In a July 30, 2009 letter to Plaintiff, Szabo wrote that the college's disability documentation requirements changed after the Fall 2008 semester.  He stated that Plaintiff was required to submit "sub-scores from neuropsychological testing" in order to receive disability accommodations for the Fall 2009 semester.

115.    In his July 30, 2009 letter, Szabo stated that Plaintiff was required to "work" with Fabio if Plaintiff wanted to receive accommodations.  Szabo went on to state that "[i]f you fail to provide the college with detailed and sufficient medical documentation of your impairement(s), the college cannot appropriately evaluate your request."  Near the end of his letter, Szabo states that: "I must reiterate, however, that you must work with Ms. Fabio regarding any request for disability accommodations."

116.    On or about August 12, 2009, MassArt placed Plaintiff's financial aid award for the Fall 2009 semester "on hold."

117.   On August 18, 2009, Plaintiff sent Szabo a letter via email and U.S. Mail objecting to MassArt placing Plaintiff's financial aid "on hold."

118.   On August 20, 2009, Plaintiff received by U.S. Mail an unsigned tuition and fee bill in the amount of $5,490.00.  The bill stated that "[t]o avoid the loss of your schedule and a $200 late fee this bill must clear by August 24, 2009."

119.   On August 21, 2009, Plaintiff sent Szabo a letter via email and U.S. Mail objecting to losing financial aid and MassArt providing only a few days to pay tuition and fees without losing registered classes and paying a late fee.

120.   In his August 21, 2009 letter to Szabo, Plaintiff objected to MassArt's most recent conditions for Plaintiff to receive disability accommodations.  Plaintiff requested Szabo to list the specific "sub-scores" MassArt sought as well as to identify all person(s) who would review and have access to the sub-scores.  Plaintiff reiterated that Fabio discriminated against him and that she was to have no involvement in his education.  Plaintiff again requested disability accommodations and requested that Wallace facilitate the accommodation process for Plaintiff.

121.   On August 27, 2009, Szabo sent Plaintiff a letter via email and U.S. Mail.  In this letter, Szabo stated that: "Catherine Fabio needs more detailed information from your neuropsychological exam in order to provide letters requesting classroom accommodations. Alternatively, you may meet with her in person to explain why you feel the college does not need this information, and to afford her the opportunity, as the college's learning specialist, to more thoroughly discuss with you the nature of your limitations."

122.   On September 1, 2009, Bradley A. Singer, counsel for Plaintiff, wrote to Szabo and requested a meeting with MassArt to discuss whether an agreeable solution regarding Plaintiff's

Fall 2009 semester request for accommodations could be achieved before the semester started on September 9, 2009 or whether court intervention would be necessary.

123.   On September 4, 2009, Allison J. Little, counsel for MassArt, contacted counsel for Plaintiff.

124.   On September 4, 2009, MassArt withdrew its demand for Plaintiff to submit a neuropsychological report or sub-scores and approved disability accommodations for Plaintiff for the Fall 2009 semester.

125.   On September 4, 2009, MassArt withdrew its requirement that Fabio facilitate and participate in Plaintiff's disability accommodations.

126.   On September 4, 2009, MassArt designated Michele Furst ("Furst"), Associate Vice President of Academic Affairs, as the person to facilitate Plaintiff's disability accommodations for the Fall 2008 semester and subsequent semesters.

127.   On September 8, 2009, Furst drafted accommodation letters for Plaintiff's Fall 2009 semester courses and sent the letters via email to Plaintiff and Plaintiff's professors.

128.   During the Fall 2009 semester, Plaintiff continued to pursue a Bachelor's Degree, with concentrations in Graphic Design and Photography.   He regularly communicated with his professors about his disability and kept them apprised of his progress and need for accommodations.

129.   One of Plaintiff's courses during the Fall 2009 semester, Graphic Design Studio, was taught by three professors in three consecutive multi-week sessions.   Apparently, Furst only provided an accommodation letter to the professor for the first session of the course.   Plaintiff

20

did not know that the second session professor, Joe Quackenbush ("Quackenbush"), did not know about Plaintiff's need for accommodations until midway through the second session.

130.    Plaintiff then facilitated providing an accommodation letter to Quackenbush.  However, Quackenbush did not sign or return the accommodation letter to Plaintiff.

131.    Quackenbush required Plaintiff to provide 660 sketches and drawings in a 28 day period of time.  He required Plaintiff to complete more sketches and drawings than other students in the course.

132.    Quackenbush refused to provide Plaintiff with more than thirteen (13) days beyond the second session to complete all of the sketches/drawings and would not allow Plaintiff to turn in all completed work by the end of the semester.  Rather, Quackenbush required Plaintiff to submit all work by November 23, 2009.  The last day of the semester was December 17, 2009.

133.    On November 27, 2009, Quackenbush gave Plaintiff a failing grade in the session for not completing all of the session's work by November 23, 2009.

134.    Quackenbush's actions violated multiple MassArt academic and learning disability policies.

135.    During the Fall 2009 semester, the Graphic Design department chairperson, Lisa Rosowsky ("Rosowsky"), told Plaintiff multiple times that he was too slow for graphic design, that Plaintiff should not receive extra time to complete assignments and should not be in the Graphic Design program.

136.    Starting at 9:00 a.m. on December 17, 2009, MassArt held a "Review," when, for several hours, students display their work created in their semester courses and receive ungraded feedback from various MassArt and industry persons.

21

137.    Plaintiff arrived to the Review at approximately 11:00 a.m.  Plaintiff had completed all assigned work for all three of his Fall 2009 courses, brought the work to the Review and was prepared to display his work at the Review and have his work graded.  The Review was scheduled to continue for several more hours after Plaintiff arrived.

138.    Rosowsky refused to allow Plaintiff to show his work during the Review or to turn it in to his professors for grading.

139.    Orally and via a December 17, 2009, 12:14 p.m. email, Rosowsky notified Plaintiff that he was being dismissed from the Graphic Design program for "missing" the Review.  Rosowsky further stated that the Graphic Design department had a departmental policy that students are automatically dismissed from the program if they miss the Review.

140.    MassArt and Rosowsky never provided Plaintiff with the Graphic Design department's alleged written policies or any written policy regarding arriving late to the Review or automatic failing grades determined without grading a student's work.

141.    The Graphic Design department's alleged written policies are not provided on MassArt's website and have never been provided to Plaintiff.

142.    In her December 17, 2009 email, Rosowsky stated that she would have Plaintiff's grades for his Fall 2009 graphic design courses by the end of the day.

143.    In a December 17, 2009 correspondence entitled "Student Review Form," Rosowsky, without explanation, notified Plaintiff that he was receiving failing grades in the two Graphic Design courses he took during the Fall 2009 semester.

144.    MassArt's dismissal of Plaintiff from the Graphic Design program and issuing him failing grades violated MassArt's Academic Standing, Grading System, disability and anti-discrimination policies.

145.    During the Fall 2009 semester, MassArt failed and refused to provide Plaintiff with reasonable disability accommodations.

146.    At the request of Furst, Plaintiff met with Furst and Wallace on December 21, 2009.

147.    During the December 21, 2009 meeting, Furst and Wallace stated that MassArt was failing Plaintiff in the two Graphic Design courses he took during the Fall 2009 semester.  They also stated that he could not continue in the Graphic Design program because he is "slow."  Furst and Wallace further notified Plaintiff that, depending on his grade in a photography course taken during the Fall 2009 semester, MassArt would decide on January 11, 2010 whether to dismiss Plaintiff from the college or allow him to attend the college part-time, without financial aid.  If so, Plaintiff will be allowed to take only one course per semester.

148.    MassArt's attempt to expel Plaintiff from the college or limit his access to the school violates MassArt's academic, disability and anti-discrimination policies.

149.    By letter dated December 21, 2009, MassArt sent Plaintiff a tuition bill in the amount of $3,690.00 payable by January 4, 2010.

150.    Classes for the Spring 2010 semester start on January 20, 2010.

151.    To date, Plaintiff has paid MassArt thousands of dollars in tuition and fees and Plaintiff has incurred at least $65,000 in attendance costs since September of 2007.

152.    MassArt faculty and staff are engaged in a lengthy pattern of discrimination, retaliation and wrongful conduct against Plaintiff which spans 2 ½ years.  Defendants discriminated and

23

retaliated against, and continue to discriminate and retaliate against, Plaintiff on the basis of his disability, have engaged in discriminatory and retaliatory efforts to dismiss Plaintiff from the Industrial Design and Graphic Design programs and are currently engaged in a discriminatory and retaliatory effort to expel Plaintiff from the college.

153.   A preliminary and permanent injunction is necessary to prevent MassArt from expelling Plaintiff from the college, limiting him to part-time status, terminating his financial aid, cancelling his Spring 2010 course schedule, refusing and failing to provide reasonable disability accommodations and preventing Plaintiff from completing a bachelor's degree in Graphic Design and Photography.

## COUNT I
### (Violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et. seq.*-Massachusetts College of Art & Design)

154.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 153 of this Verified Complaint as if fully set forth herein.

155.   The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et. seq.*, prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, privileges, advantages, and accommodations in any place of public accommodation by a person who owns, leases, or operates a place of public accommodation.

156.   At all relevant times hereto, Plaintiff qualified as a disabled person under the ADA and Plaintiff's disability substantially limits one or more major life activities, including the ability to learn.

157.   At all relevant times hereto, MassArt operated and continues to operate a place of public accommodation.

24

158. At all relevant times hereto, MassArt was mandated by the ADA to provide persons with ADD with reasonable disability accommodations.

159. MassArt violated the ADA by discriminating against, excluding and retaliating against Plaintiff on the basis of his disability, including, but not limited to:

      a.      failing and refusing to provide Plaintiff with reasonable disability accommodations for multiple semesters;

      b.      failing and refusing to provide Plaintiff and his professors with disability accommodation letters;

      c.      delaying, withholding and attempting to withhold reasonable disability accommodations from Plaintiff;

      d.      discouraging Plaintiff from receiving disability accommodations;

      e.      retaliating against Plaintiff;

      f.      attempting to harass, humiliate and intimidate Plaintiff;

      g.      creating a hostile learning environment;

      h.      requiring Plaintiff to submit excessive, unnecessary, irrelevant and overly burdensome documentation and other requirements in order to receive disability accommodations;

      i.      instituting and applying policies and procedures which screen-out, tend to screen-out or discourage students from receiving disability accommodations;

      j.      applying vague and discretionary accommodation and academic policies and procedures in an arbitrary, capricious and discriminatory manner against Plaintiff;

L:\3075\000\Pld\01

k.      violating MassArt's disability, academic, anti-discrimination and other college policies and procedures;

l.      conducting classes in hallways;

m.     failing to sufficiently train its faculty and staff to teach and assist persons with ADD and other learning disabilities;

n.      attempting to cancel Plaintiff's financial aid, issuing Plaintiff failing grades, placing him on academic probation, dismissing him from the Graphic Design program, threatening the cancellation of his course schedule and attempting to expel Plaintiff from the college;

o.      discouraging Plaintiff from pursuing an education and career in Industrial Design and Graphic Design; and;

p.      encouraging Plaintiff multiple times to leave MassArt.

160.    MassArt's violations of the ADA have caused Plaintiff injury, including financial loss and severe emotional distress.

WHEREFORE, Plaintiff seeks judgment and damages against Defendant MassArt for violating the ADA in an amount to include compensatory damages, damages for emotional distress, exemplary damages, interest, costs and attorneys' fees.

## COUNT II
### (Violation of the Americans With Disabilities Act, 42 U.S.C. §§ 12101, *et. seq.*-Fabio)

161.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 160 of this Verified Complaint as if fully set forth herein.

162.    Fabio controlled and had authority from MassArt to determine disability documentation requirements and assess documentation submitted from persons requesting disability accommodations.   Fabio controlled and had authority from MassArt to grant or deny student requests for disability accommodations.

163.    Fabio violated the ADA by discriminating against, excluding and retaliating against Plaintiff on the basis of his disability, including, but not limited to:

a.    failing and refusing to provide Plaintiff with reasonable disability accommodations for multiple semesters;

b.    failing and refusing to provide Plaintiff and his professors with disability accommodation letters;

c.    delaying, withholding and attempting to withhold reasonable disability accommodations from Plaintiff;

d.    discouraging Plaintiff from receiving disability accommodations;

e.    retaliating against Plaintiff;

f.    attempting to harass, humiliate and intimidate Plaintiff;

g.    creating a hostile learning environment;

h.    requiring Plaintiff to submit excessive, unnecessary, irrelevant and overly burdensome documentation and other requirements to receive disability accommodations;

i.    instituting and applying policies and procedures which screen-out, tend to screen-out or discourage students from receiving disability accommodations;

j.    applying vague and discretionary disability accommodation policies and procedures in an arbitrary, capricious and discriminatory manner against Plaintiff;

27

k.      violating MassArt's disability accommodation and anti-discrimination policies and procedures;

l.      allowing classes to be conducted in hallways; and

m.      failing to sufficiently train MassArt's faculty and staff to teach and assist persons with ADD and other learning disabilities;

164.    Fabio's violations of the ADA have caused injury to Plaintiff, including financial loss and severe emotional distress.

WHEREFORE, Plaintiff seeks judgment and damages against Defendant Fabio for violating the ADA in an amount to include compensatory damages, damages for emotional distress, exemplary damages, interest, costs and attorneys' fees.

### COUNT III
**(Violation of the Massachusetts Equal Rights Act,**
**Mass. Gen. L. c. 93, § 103, -Massachusetts College of Art & Design)**

165.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 164 of this Verified Complaint as if fully set forth herein.

166.    The Massachusetts Equal Rights Act ("MERA"), Mass. Gen. L. c. 93, § 103, protects persons with learning disabilities from being deprived of the full and equal benefit of all rights and laws for the security of persons and property, including, but not limited to, the rights secured under Article 114 of the Massachusetts Constitution.

167.    As set forth herein, MassArt violated the MERA by discriminating against, excluding and retaliating against Plaintiff on the basis of his disability.

168.    MassArt's violations of the MERA have caused injury to Plaintiff, including financial loss and severe emotional distress.

28

WHEREFORE, Plaintiff seeks judgment and damages against Defendant MassArt for violating the MERA in an amount to include compensatory damages, damages for emotional distress, exemplary damages, interest, costs and attorneys' fees.

## COUNT IV
### (Violation of the Massachusetts Equal Rights Act,
### Mass. Gen. L. c. 93, § 103, -Fabio)

169.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 168 of this Verified Complaint as if fully set forth herein.

170.    As set forth herein, Fabio violated the MERA by discriminating against, excluding and retaliating against Plaintiff on the basis of his disability.

171.    Fabio's violations of the MERA have caused injury to Plaintiff, including financial loss and severe emotional distress.

WHEREFORE, Plaintiff seeks judgment and damages against Defendant Fabio for violating the MERA in an amount to include compensatory damages, damages for emotional distress, exemplary damages, interest, costs and attorneys' fees.

## COUNT V
### (Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794, *et. seq.*
### -Massachusetts College of Art & Design)

172.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 171 of this Verified Complaint as if fully set forth herein.

173.    Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794, *et seq.* ("Rehabilitation Act"), prohibits any program or activity that receives federal financial assistance from excluding from participation, denying benefits to, or subjecting to discrimination any individual with a disability solely on the basis of that disability.

29

174.    At all times relevant hereto, MassArt received and continues to receive federal financial assistance and is a program or activity under the Rehabilitation Act.

175.    At all times relevant hereto, MassArt was and is subject to compliance with the Rehabilitation Act.

176.    As set forth herein, MassArt violated the Rehabilitation Act by discriminating against, excluding and retaliating against Plaintiff on the basis of his disability.

177.    MassArt's violations of the Rehabilitation Act have caused injury to Plaintiff, including financial loss and severe emotional distress.

WHEREFORE, Plaintiff seeks judgment and damages against Defendant MassArt for violating the Rehabilitation Act in an amount to include compensatory damages, damages for emotional distress, exemplary damages, interest, costs and attorneys' fees.

<u>COUNT VI</u>
**(Breach of Contract-Massachusetts College of Art & Design)**

178.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 177 of this Verified Complaint as if fully set forth herein.

179.    In 2007, Plaintiff contracted with MassArt to attend the college as an undergraduate student.

180.    Since 2007, Plaintiff has paid thousands of dollars in tuition, fees and other expenses to MassArt and Plaintiff has incurred at least $65,000 in attendance costs since September of 2007.

181.    As set forth herein, MassArt breached its contract with Plaintiff.

182.    MassArt's breach of contract has caused injury to Plaintiff, including financial loss and severe emotional distress.

WHEREFORE, Plaintiff Jorge A. Maisonet demands judgment against Defendant MassArt for breach of contract in an amount to include compensatory damages, damages for emotional distress, exemplary damages, interest, costs and attorneys' fees.

## COUNT VII
### (Promissory Estoppel-Massachusetts College of Art & Design)

183.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 182 of this Verified Complaint as if fully set forth herein.

184.   MassArt promised orally and in writing to provide Plaintiff with reasonable ADD disability accommodations.

185.   Plaintiff detrimentally relied on MassArt's promises to provide Plaintiff with reasonable ADD disability accommodations.

186.   MassArt failed and refused to provide Plaintiff with reasonable ADD disability accommodations for multiple semesters.

187.   MassArt breached its academic, disability and anti-discrimination policies and procedures and discriminated, excluded and retaliated against Plaintiff on the basis of his disability.

188.   As a result of MassArt's breach of its promises, policies and procedures, Plaintiff has suffered financial loss and severe emotional distress.

WHEREFORE, Plaintiff Jorge A. Maisonet demands judgment against Defendant MassArt on his claim of promissory estoppel in an amount to include compensatory damages, damages for emotional distress, exemplary damages, interest, costs and attorneys' fees.

## COUNT VIII
### (Unjust Enrichment-Massachusetts College of Art & Design)

189.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 188 of this Verified Complaint as if fully set forth herein.

190.   Since 2007, Plaintiff has paid thousands of dollars in tuition, fees and other expenses to MassArt and Plaintiff has incurred at least $65,000 in attendance costs since September of 2007.

191.   As set forth herein, MassArt has been unjustly enriched by Plaintiff's tuition, fee and expense payments to the college.

WHEREFORE, Plaintiff Jorge A. Maisonet demands judgment against Defendant MassArt on his claim of unjust enrichment in an amount to include compensatory damages, damages for emotional distress, exemplary damages, interest, costs and attorneys' fees.

## COUNT IX
### (Injunctive Relief-Massachusetts College of Art & Design)

192.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 191 of this Verified Complaint as if fully set forth herein.

193.   Plaintiff prays for the Court to enjoin MassArt from discriminating against, excluding or retaliating against Plaintiff on the basis of his disability and to order MassArt to provide Plaintiff with reasonable disability accommodations.

194.   Plaintiff prays for the Court to enjoin MassArt from expelling Plaintiff from the college, from withholding financial aid, from designating Plaintiff as a part-time student and limiting Plaintiff to taking one course per semester.   Further, Plaintiff prays for the Court to order MassArt to reinstate Plaintiff to the Graphic Design program, remove Plaintiff from academic probation, remove all failing grades issued to Plaintiff during each semester in which he did not

L:\3075\000\Pld\01

receive reasonable disability accommodations, to grade Plaintiff's coursework completed during the Fall 2009 semester and to provide legitimate grades for the Graphic Design courses Plaintiff took during the Fall 2009 semester.

WHEREFORE, Plaintiff Jorge A. Maisonet prays that the Court enter a preliminary and permanent injunction against MassArt.

## COUNT X
### (Intentional Infliction of Emotional Distress-Massachusetts College of Art & Design)

195.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 194 of this Verified Complaint as if fully set forth herein.

196.   As forth herein, MassArt intentionally inflicted emotional distress on Plaintiff by discriminating against, excluding and retaliating against Plaintiff on the basis of his disability.

197.   As a result of MassArt's intentional, wrongful and discriminatory conduct against Plaintiff, Plaintiff has suffered severe emotional distress.

WHEREFORE, Plaintiff Jorge A. Maisonet demands judgment against Defendant MassArt for intentional infliction of emotional distress in an amount to include compensatory damages, damages for emotional distress, exemplary damages, interest, costs and attorneys' fees.

## COUNT XI
### (Intentional Infliction of Emotional Distress-Fabio)

198.   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 197 of this Verified Complaint as if fully set forth herein.

199.   As set forth herein, Fabio intentionally inflicted emotional distress on Plaintiff by discriminating against, excluding and retaliating against Plaintiff on the basis of his disability.

33

200.    As a result of Fabio's intentional, wrongful and discriminatory conduct against Plaintiff, Plaintiff has suffered severe emotional distress.

WHEREFORE, Plaintiff Jorge A. Maisonet demands judgment against Defendant Fabio for intentional infliction of emotional distress in an amount to include compensatory damages, damages for emotional distress, exemplary damages, interest, costs and attorneys' fees.

## COUNT XII
### (Declaratory Judgment-Massachusetts College of Art & Design)

201.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 200 of this Verified Complaint as if fully set forth herein.

202.    Plaintiff prays for the Court to declare that, as set forth herein, MassArt discriminated against, excluded and retaliated against Plaintiff on the basis of his disability and that MassArt breached its contract with Plaintiff.

WHEREFORE, Plaintiff Jorge A. Maisonet prays that the Court enter a declaratory judgment in favor of Plaintiff and against Defendant MassArt and that judgment enter against Defendant MassArt in an amount to include compensatory damages, damages for emotional distress, exemplary damages, interest, costs and attorneys' fees.

## COUNT XIII
### (Declaratory Judgment-Fabio)

203.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 202 of this Verified Complaint as if fully set forth herein.

204.    Plaintiff prays the Court declare that, as set forth herein, Fabio discriminated against, excluded and retaliated against Plaintiff on the basis of his disability.

WHEREFORE, Plaintiff Jorge A. Maisonet prays that the Court enter a declaratory judgment in favor of Plaintiff and against Defendant Fabio and that judgment enter against Defendant Fabio in an amount to include compensatory damages, damages for emotional distress, exemplary damages, interest, costs and attorneys' fees.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

JORGE A. MAISONET

By his attorney,

January 7, 2010

Bradley A. Singer, BBO # 654492
LAW OFFICES OF BRADLEY A. SINGER
bsinger@bradsingerlaw.com
Two Salem Green
Salem, MA  01970
Tel. (978) 740-9300
Fax (978) 485-0050

35

## VERIFICATION

State of Massachusetts        }
County of Middlesex           }  ss.

I, Jorge A. Maisonet, deposes and states the following to be true to the best of my knowledge, information and belief:

1.      I have personal knowledge of the factual allegations contained in this Verified Complaint, and I know them to be true, except, as to those matters stated upon information and belief, I believe them to be true.

I declare under the penalty of perjury that the foregoing is true and correct.  Executed on January ___, 2010.

_____
Jorge A. Maisonet

36

L:\3075\000\Pld\01