CA No. 1:10-CV-10016-MLW

JORGE A. MAISONET,
        Plaintiff

v.

MASSACHUSETTS COLLEGE OF ART
AND DESIGN and
CATHERINE FABIO
        Defendants

## AFFIDAVIT OF CATHERINE FABIO

Now comes Catherine Fabio, and deposes, saying:

1.    I am one of the defendants in this action.  This
affidavit is given in response to the request of the plaintiff
Jorge A. Maisonet ("Maisonet") for injunctive relief.

2.    On June 16, 2008, I joined the staff of
Massachusetts College of Art and Design ("the College") as a
part-time learning specialist.  I became full-time on
September 2, 2008.  Among other responsibilities, I address
the classroom accommodation needs of students with documented
learning, attention deficit, psychiatric, and pervasive
development disorders.  I conduct clinical interviews, read
(and interpret scores, as necessary) students' medical
documentation, and determine reasonable and appropriate
accommodations for each course in which a student is enrolled.

I counsel students about their rights as well as their responsibilities under the ADA-AA. I also explain to them the process for requesting and receiving accommodations each semester. I write accommodation memos, which each student reviews with me. Together, the student and I sign the memos (one for each course in which he or she will receive accommodations). The student signs each memo, stating that he or she understands his or her rights and responsibilities under the ADA-AA. I instruct the student to take each memo to each faculty member, requesting a signature as well as a conversation about the accommodations. I counsel students in the development of self-advocacy skills, guiding them through sometimes difficult interactions with faculty and staff. I also assist faculty and staff in developing the best practices for working with students with disabilities as well as in understanding the federal mandate. When students and faculty are having difficulty communicating, and the student requests it, I intervene and advocate on behalf of the student.

3. When I started in 2008 I was instructed to "grandfather in on a case-by-case basis" (meaning to provide the same or similar accommodations), students who had been receiving accommodations before I came to work at the College.

4. There follows a chronology of my contacts with or about Maisonet regarding his fall, 2008, request for an

accommodation. This information comes from my memory and contemporaneously kept notes.

Wednesday, August 20, 2008.

I received a telephone message from Jean Wallace, in the Advising Office, stating that she was "introducing" a student named "Maisonet" to me. She was assisting him with financial aid and would also like him to know of my services. This was the first time I heard Maisonet's name. I returned Wallace's call the same day, stating I would be happy to meet with him, and instructing her to encourage him to make an appointment with me.

Tuesday, September 2, 2008.

I received a telephone message from Maisonet. He said he would like to meet. He left his telephone number and asked me to return his call, which I did. We scheduled an appointment for the following day. I instructed him to bring any documentation he had and also to bring his course schedule for the current semester.

Wednesday, September 3, 2008.

I met with Maisonet at 2:15 p.m. He did not have any documentation. He said that Julia Lev-Rosenfeld, in the Counseling Center, had diagnosed

him with ADHD.  He said that he had seen her
consistently since last semester for ADHD counseling
and that he planned to continue.  I said that was a
good idea, and encouraged him to make an appointment
with her as soon as possible before she booked up
for the semester.  I telephoned Julia Lev-Rosenfeld
and requested Maisonet's documentation.  I
instructed Maisonet to come back in one week
(September 10, 2008), at 1:15 p.m., which would give
me time to secure his documentation, read it, and
determine the appropriate accommodations, if any.

Wednesday, September 10, 2008.

I met with Maisonet for our 1:15 p.m. appointment.
He gave me a letter from Georgia Perimeter College
that, he claimed, had granted him accommodations in
the past.  I explained that was not appropriate
documentation, but that in the interest of time and
fairness I would accommodate his request this
semester, but that I would need appropriate
documentation if he were to request accommodations
in the future.  I explained that he would need to
provide either a neuropsychology report or a letter
from a psychiatrist documenting a history of
ADD/ADHD, including a diagnosis code.  He said that

he understood. We discussed his accommodations. He requested only extended time for tests and projects. He gave me his course schedule. I instructed him to return the next day and pick up the accommodation memos. He agreed to return at 12:45 p.m. the following day to review the memos and sign them. I said he should take the memos to his professors, have them signed, and return them to me[1]. I contacted Julia Lev-Rosenfeld again, seeking Maisonet's file.

Thursday, September 11, 2008.

Maisonet's accommodation memos were ready, but he did not appear for his 12:45 p.m. appointment to pick them up. One of the memos is attached hereto as Exhibit A.

Some time later in September, 2008.

I saw Julia Lev-Rosenfeld, in passing, on campus. I asked if she had heard from Maisonet, and said that

---

[1]It is the policy of the College, (1) that I meet with each student to review each accommodation memo, explain their responsibilities related to the accommodation, and have them sign the memo to demonstrate their acceptance of their responsibilities as well as their accommodations; (2) that the students deliver the memos to their professors and discuss the logistics of any accommodations given; (3) that the faculty member either signs the memo, documenting his or her understanding of his or her responsibilities OR telephone me, informing me that he or she is unwilling to sign the memo (usually because he or she believes that the accommodation may interfere with the delivery or standards of the course); and (4) that the student return the signed memos to my office where they are kept in the student's file.

I was concerned and wondered if she would let him know that. I told her that he had not picked up his accommodation memos. Julia said that she had not seen him, either, and that he often does not follow through. I wondered if he was ok. She said she would follow up.

Thursday, October 23, 2008.

Maisonet called and requested an appointment. I said that I was concerned about him and was glad he called. I told him I still had his memos and had been waiting for him to come and pick them up. I scheduled to see him the next day at 1:15 p.m.

Friday, October 24, 2008.

I received a telephone message from Maisonet at 11:13 a.m. The message said that he needed to cancel our appointment because he was "going to emergency room at hospital." I returned his call at the number he provided and left a message, asking how I could help, or whether he needed anything from me or the Counseling Center. I called Julia Lev-Rosenfeld to let her know that Maisonet was in the hospital.

Monday, October 27, 2008.

At 9:13 a.m. I received a telephone message from
Maisonet, saying, "I will be out from school until
Thursday," and leaving his number, "781-605-1678."
I could not understand the entire message because he
spoke very softly.  I returned his call and spoke
with him.  He said that he wanted to talk with me
about changing the memos so that they said something
about writing assignment extensions. He said he went
into the hospital on Friday, had two surgeries over
the weekend, and would be out of school until
Thursday, October 30, 2008.  He said that he had
sent e-mails to his professors telling them this.
Because I was told to "grandfather in" students who
had accommodations in the past, I told Maisonet that
I would edit the memos and reprint them.  I said he
could pick them up on Thursday, October 30, 2008, at
11:30 a.m.  At this time, I would ask Maisonet (as I
do all students) to read the memo and let me know if
he had any questions or concerns.  I would also
explain in detail each of his responsibilities, as
outlined in the memo.  I would then sign each memo
and ask him to do the same, documenting his
understanding of his rights as well as his
responsibilities.

Thursday, October 30, 2008.

Maisonet did not appear for his 11:30 a.m. appointment to read, discuss, sign, and take the revised memos. One of the revised memos, granting more time for written projects, is attached hereto as Exhibit B.

Friday, October 31, 2008.

I had to be out of the office at an all day conference, and wanted to be certain that Maisonet got his memos. I asked Lynn Fallo, an administrative assistant in the Liberal Arts office, if she would give the memos to Maisonet when he came in. She agreed. I signed the memos and put them in a sealed envelope with his name on it. I took the envelope to Lynn Fallo, who is the first person you see when you enter the Liberal Arts Office. I telephoned Maisonet and left a voice mail message telling him that he could pick up the memos from Lynn Fallo in the Liberal Arts office on the ninth floor. I later learned that he never picked them up.

Wednesday, November 5, 2008.

I received an e-mail from Dan Szabo, Director of Academic Advising. It said, "Catherine: Jorge

Maisonet was meeting with Jean [Wallace] and saying that he's concerned that his letters haven't gone out (this is second hand mind you). But he was unwilling to make another appointment with you. So I suggested to Jean that he talk to Mercedes [Evans]. Just wanted to give you a heads up. He seems like a troubled person, in my past encounters with him." I responded by e-mail, "He never showed up to pick them up. I tried contacting him several times. I contacted Julia L-R in the Counseling Center. Last Friday, I finally called him again and left a message saying he could pick them up in the Writing Center,[2] because I would be at a conference all day."

Later in the day I responded to Szabo more fully, sending an e-mail that said, "Hi Dan, attached, please find the letters I wrote for this student back on September 10th. He never picked them up. He stood me up at our appointment for him to read them, ok them and sign them. I called him three times and also called JLR in the Counseling Center because he had been working with her last year. I even requested JLR reserve one of her weekly hours (of

---

[2]The Writing Center is in the Liberal Arts Office where Lynn Fallo sits.

which she has only 8) for him. He never showed up
for her, either, even though he requested the first
week of school that he be in her case load.
Finally, about two weeks ago, he showed up at my
door asking for letters. He decided he wanted
different accommodations. So I rewrote the letters
and set another appointment with him to come and
sign them and take them to the professors (he showed
up at a time when I was meeting with other students
so couldn't write the letters right then and there).
The day he was supposed to pick up the letters
(Friday, October 24) he called and cancelled, saying
he was in the ER and was going to have surgery. I
called and left a message for him to see if
everything was ok. No response. I called JLR to
let her (and the Health Center) know he was in the
hospital as well. That's when she said she had not
seen him all semester. She filled his space with
another student. I then called him the following
Monday (October 27th). He said he had had two
surgeries and would not be on campus until Thursday.
I told him he could pick up the letters on Thursday.
He never showed up. The following day, Friday, I
left the letters with Lynn Fallo in the Writing

Center because I was at the COF [Colleges of the
Fenway] Conference most of the day. He never picked
up the letters. I'm attaching the original ones
now, so you can see that his letters were ready on
September 10, 2008. Please let me know if you have
any more questions. Thanks for letting me know he
came to see you."

5.   On December 19, 2008, I sent a letter to Maisonet
seeking information to support any claim he wished to make for
an accommodation during the spring, 2009, semester. A copy of
the letter is attached hereto as Exhibit C. I checked off the
form of documentation he needed to support his claim of
Attention Deficit Disorder. I also checked off the medical
questionnaire in case he had a medical condition to report
(remembering that in our last interaction he stated he had two
surgeries). I did <u>not</u> check off the box requiring a
"pschoeducational or neuropsychological evaluation report"
because that information is required only to diagnose a
learning disorder. Maisonet had not at this point claimed a
learning disorder. He claimed only Attention Deficit
Disorder.

6.   My letter of December 19, 2008, was a form sent to
all students who had self-identified as a MassArt student with
a disability within the past six years. All students claiming

Attention Deficit Disorder were asked to provide the same
information -- documentation "outlining 1) history of
ADD/ADHD; 2) assessment method used to make the diagnosis; 3)
evidence ruling out other disorders; and 4) a diagnostic
code"; and "signed and dated Massachusetts College of Art and
Design medical Questionnaire, completed in fully [sic] by a
licensed clinician, within six months of the date of this
letter, listing either a diagnosis and diagnostic code(s) or a
statement that a disability is not present if a medical
disability also exists."[3]  "Evidence ruling out other
disorders" is requested because ADD and ADHD symptoms are
similar to symptoms of thousands of other medical and
psychological disorders (depression, anxiety, PTSD, untreated
dental problems, nerve pain disorders, etc.).[4]  Therefore, it
is imperative that the diagnostician "rule out" other possible
explanations for the symptoms.  It is accepted in the

_____

[3]I added the underlined words to Maisonet's letter by hand.

The College's 2008-2009 Undergraduate Academic Catalogue included this
language about accommodations:  "Only students whose learning disabilities
have been diagnosed through a professional diagnosis are eligible for
accommodations which will enable them to complete their courses
successfully at Massachusetts College of Art and Design.  Students whose
learning disabilities are undiagnosed must take the initiative in seeking
professional diagnosis.  Counseling Services provides referrals to
clinicians experienced in assessing and treating ADD/ADHD.  Students are
strongly advised to complete diagnostic procedures before courses begin to
be properly prepared for class."  (p. 126)
[4]One of the diagnostic criteria of Attention-Deficit/Hyperactivity Disorder
is, "The symptoms do not occur exclusively during the course of a Pervasive
Developmental Disorder, Schizophrenia, or other Psychotic Disorder and are
not better accounted for by another mental disorder (e.g., Mood Disorder,
Anxiety Disorder, Dissociative Disorder, or a Personality Disorder)."
Diagnostic and Statistical Manual of Mental Disorders (4th Ed.), p. 93.

psychiatric community that certain parameters must be used in order to diagnose ADD/ADHD.  These parameters include (among other things) documenting a history of symptoms beginning in childhood, as well as documenting that other disorders mimicking ADD/ADHD have been properly ruled out.  The decision to use these guidelines was carefully made, based on the College's commitment to best practices.

7.    My December 19, 2008, letter to Maisonet directed him to criteria for appropriate documentation at the College's Web site at http://inside.massart.edu/x934.xml.  A copy of the page at that URL entitled, "Students with Disabilities," is attached hereto as Exhibit D.  The text includes, "According to the ADAAA, students seeking services and/or accommodations must first self-identify themselves to the appropriate disability-related person or department at the school. * * * The most efficient way to self-identify is to do the following: 1.  Secure appropriate documentation from your doctor/clinician. * * * 4.  Catherine Fabio, Mass Art's Learning Specialist (617-879-7958, cfabio@massart.edu), will examine the documentation and make a decision about the appropriateness of the accommodations request.  You may be asked to come in for a clinical interview and/or to provide additional information."  (emphasis added)

8.   Maisonet never responded to my letter of December 19.  In particular, he never asked me to explain why "evidence ruling out other disorders" was necessary.  Rather, the next communication I had regarding Maisonet was a February 13, 2009, letter from the School's Director of Civil Rights Compliance and Diversity, Mercedes Evans, enclosing a copy of a complaint by Maisonet asserting that I had discriminated against him on the basis of his disability.  A copy of my February 24, 2009, response to the complaint is attached hereto as Exhibit E.  Statements in the response are taken from my contemporaneously kept notes, and are true.

9.   On June 16, 2009, I sent an e-mail to Johanna Branson and Michele Furst, saying, "I've been wanting to talk with you and Michele about this particular student.  I'm genuinely worried about my safety.  I know that's not necessarily what you want to discuss in the meeting -- but I've been concerned for a while now."  A copy of the e-mail is attached hereto as Exhibit F.

10.  On July 27, 2009, I received a copy of Maisonet's new ADA-AA accommodations request form dated July 16, 2009.  A copy is attached hereto as Exhibit G.  This was a second ADA form submitted by Maisonet.  Typically, students only self-identify once.  His first form was submitted in 2008.  The second form had an additional diagnosis (not mentioned in the

original form) of a "Verbal Learning Disorder," in addition to
"Attention Deficit Disorder," which he had always claimed.
Documentation of a Verbal Learning Disorder requires a
neuropsychological evaluation. All College students claiming a
learning disorder or learning disability are requested to
provide a recent neuropsychological evaluation report.
Maisonet had never mentioned a learning disorder in any of my
communications with him.

11.  The printed text immediately above Maisonet's
signature on the accommodation request includes this sentence:
"I understand that I may be asked to supply additional
information in order for Massachusetts College of Art to
fulfill this request."

12.  On July 27, 2009, I also received a copy of the
College's medical questionnaire that a psychiatrist completed
for Maisonet on March 26, 2009.  A blank copy of the
questionnaire is attached hereto as Exhibit H.  On the first
page it says, "Massachusetts College of Art and Design
reserves the right to contact the clinician named below, to
clarify facts or obtain further information."  The
questionnaire states that Maisonet has Attention Deficit
Disorder and a Verbal Learning Disorder.  However, except for
stating that Maisonet has those disorders, no concrete
evidence was provided.  Mr. Maisonet had never mentioned a

learning disorder to me. He only stated that Julia Lev-Rosenfeld had diagnosed him with ADHD.

13. Many of Maisonet's July, 2009, accommodation requests were not appropriate for students diagnosed with Attention Deficit Disorder; they were more appropriate for various forms of learning disabilities. I was asked by my supervisors to review his new requests and provide my professional opinion on their appropriateness. After studying the list, I responded that it was necessary to see comprehensive documentation of a learning disability in order to determine Maisonet's current level of impairment. That documentation would permit a determination of what accommodations were appropriate. I would also review the syllabus of each course to be taken by Maisonet, to be certain that the accommodations did not interfere with the academic integrity of each of his courses.

14. Maisonet's accommodation requests were mostly based upon a "learning disorder." In order to make an informed decision about his accommodation requests, I needed more comprehensive documentation (more specifically, to see the subtest scores) and other pertinent information from the neuropsychological tests conducted recently by his psychiatrist. That is so because appropriate accommodations for a learning disorder are determined by examining the

student's current level of impairment, as indicated in careful examination and comparison of subtest scores from the neuropsychological report, and from other assessment tools contained in the neuropsychological battery. Appropriate accommodations are those that provide equal access by accommodating a particular symptom (or symptoms) of the impairment. In a learning disability, the presence of a symptom is determined by examining subtest scores, among other things. Without supporting data from the neuropsychological test, I could not determine the appropriateness of the accommodations sought by Maisonet. Maisonet informed my supervisors that he refused to produce the neuropsychological evaluation report or any information from the test/report.

15. I had no actual contact with Maisonet after October, 2008. All information and interactions after that date were between myself and the College's ADA officer or my supervisors, at their request.

16. During the 2008-2009 academic year I saw about 160 students who requested accommodations. Twenty to twenty-five percent of them had Attention Deficit Disorder. All who claimed ADD/ADHD received the same documentation request. Those who provided the appropriate documentation and made requests appropriate to their current levels of impairment received the accommodations they requested.

Signed and sworn to under the pains and penalties of

perjury this ___10___ day of February, 2010.

Catherine Fabio

### Affidavit of Service

I hereby certify that a true copy of the above document was served upon the attorney of record for the plaintiff by transmission of the Notice of Electronic Filing through the Court's transmission facilities, on February 10, 2010.

Michael R. Coppock

**Confidential**          **MASSART**

MASSACHUSETTS COLLEGE
OF ART AND DESIGN

To:         Professor Russell

From:       Catherine Fabio, Ed,M., Learning Specialist

Subject:    ADA accommodations for Jorge Maisonet

Date:       September 10, 2008

The purpose of this memorandum is to assist the College in providing reasonable and appropriate accommodations for students with documented disabilities, as mandated by Mass Arts' policies, Section 504 of the Vocational Rehabilitation Act of 1973, and Title III of the Americans with Disabilities (ADA) Act of 1990.

Simply-- under ADA guidelines, students with documented disabilities must be provided reasonable accommodations and services that are appropriate to the individual's particular disability, *as long as they do not interfere with standards of the course or program.* Accommodations are designed to permit students with documented disabilities *equal access* to opportunities afforded other students. They are not designed to insure success or give the student academic advantages.

Jorge Maisonet, a student in your course, *EDID-325: Manufacturing Processes II,* has requested disability-related accommodations. Based upon sufficient, up-to-date medical documentation, the following accommodations are reasonable and appropriate for Mr. Maisonet and should, therefore be implemented in your classroom:

- Extended time for tests/exams (50% extended time. For example, if the exam is typically one hour long, he will be permitted 90 minutes).
- Extended time on written projects (24 hours)

Mr. Maoisonet understands that he is required to initiate a meeting with you, and then meet with you within 21 days of the date of this memo. The purpose of this meeting is for you and he to discuss these accommodations and how exactly they will be implemented.

It is my hope that these accommodations can be implemented in ways that least interfere with your current teaching practices and/or style. If you believe any of the above accommodations may affect in a significant way, your practices or the quality of standards set in your course, please contact me. This way, we can work together to determine how best to address the needs of the student while also preserving the integrity of your course. I can be reached at 617-879-7958.


EXHIBIT A          MCA   698

Please sign this memo, acknowledging that you have read it and agree to provide the accommodations listed. Mr. Maisonet will then return this form to me, where it will be placed in his file. If you choose not to sign the memo, please contact me.

Student Signature _____ Date: _____

Instructor Name _____

Instructor Signature _____ Date _____

Learning Specialist Signature: _____ Date _____

**Confidential**

To:        Professor Thomas Russell

From:      Catherine Fabio, Ed,M., Learning Specialist

Subject:   ADA accommodations for Jorge Maisonet

Date:      September 10, 2008

The purpose of this memorandum is to assist the College in providing reasonable and appropriate accommodations for students with documented disabilities, as mandated by Mass Arts' policies, Section 504 of the Vocational Rehabilitation Act of 1973, and Title III of the Americans with Disabilities (ADA) Act of 1990.

Simply-- under ADA guidelines, students with documented disabilities must be provided reasonable accommodations and services that are appropriate to the individual's particular disability, *as long as they do not interfere with standards of the course or program.* Accommodations are designed to permit students with documented disabilities *equal access* to opportunities afforded other students. They are not designed to insure success or give the student academic advantages.

Jorge Maisonet, a student in your course EDID *315: Industrial Design 1* has requested disability-related accommodations.  Based upon sufficient, up-to-date medical documentation, the following accommodations are reasonable and appropriate for Mr. Maisonet and should, therefore be implemented in your classroom:

- Extended time for tests/exams (50% extended time. For example, if the exam is typically one hour long, he will be permitted 90 minutes).
- Extended time on written projects (48 hours)

Mr. Maoisonet understands that he is required to initiate a meeting with you, and then meet with you within 21 days of the date of this memo. The purpose of this meeting is for you and he to discuss these accommodations and how exactly they will be implemented.

It is my hope that these accommodations can be implemented in ways that least interfere with your current teaching practices and/or style. If you believe any of the above accommodations may affect in a significant way, your practices or the quality of standards set in your course, please contact me.  This way, we can work together to determine how best to address the needs of the student while also preserving the integrity of your course.  I can be reached at 617-879-7958.

EXHIBIT 

MCA  0951

Please sign this memo, acknowledging that you have read it and agree to provide the accommodations listed. Mr. Maisonet will then return this form to me, where it will be placed in his file. If you choose not to sign the memo, please contact me.


Student Signature _____ Date: _____


Instructor Name _____


Instructor Signature _____ Date _____


Learning Specialist Signature: _____ Date _____

**MASSART**
MASSACHUSETTS COLLEGE
OF **ART AND DESIGN**

December 19, 2008

Dear Jorge Maisonet,

I am writing to remind you that Massachusetts College of Art and Design is moving toward compliance with the regulations of the Americans with Disabilities Amendments Act (ADAAA).  This compliance will assure protection of the right to equal access to educational/learning opportunities for students with documented disabilities, as defined by ADAAA.

As I have explained during our initial meeting, in order to receive accommodations for the Spring 2009 semester, *students must provide documentation of the reported disability.* As of this date, your file is missing the following documentation (see checked items):

_____ Psychoeducational or neuropsychological evaluation report (from an evaluation conducted less than 60 months from the date of this letter, by a licensed clinician or clinical team) including 1) either a clearly stated diagnosis or a statement that a disability is not present; 2) relevant subtest scores and scores from other instruments used to form a learning disability diagnosis; and 3) a developmental history

__✓__ Documentation, on official letterhead, from psychiatrist or other licensed clinician specializing in Attention Deficit Disorder, outlining 1) history of ADD/ADHD; 2) assessment methods used to make the diagnosis; 3) evidence ruling out other disorders; and 4) a diagnostic code

__✓__ Signed and dated Massachusetts College of Art and Design Medical Questionnaire, completed in fully by a licensed clinician, within six months of the date of this letter, listing either a diagnosis and diagnostic code(s) or a statement that a disability is not present *if a medical disability also exists*

_____ ADA self-identification form, signed and dated

_____ Other

_____ None! Your file is up to date. Please see the next page, to learn how to request accommodations for the Spring 2009 semester.

Criteria for appropriate documentation can be found on our website (http://inside.massart.edu/x934.xml) or by calling Catherine Fabio, the College's Learning Specialist at **617-879-7958** or by emailing **cfabio@massart.edu.**

EXHIBIT C                MCA    723

**MASSART**
MASSACHUSETTS COLLEGE
OF **ART AND DESIGN**

## Procedure for requesting disability-related accommodations

1. Check the enclosed letter to be certain your file is complete. If it is complete, you may skip to step # 3 below.

2. Submit necessary, up-to-date documentation (see checked items on previous page) to Catherine Fabio, Learning Specialist, Massachusetts College of Art and Design, 621 Huntington Avenue, Boston, MA 02115.

3. Contact Catherine Fabio to schedule an appointment (617-879-7958 or email: cfabio@massart.edu).

4. Meet with Catherine Fabio at your scheduled appointment time, in order to discuss appropriate accommodations for the semester. Be sure to bring your class schedule, including course names, numbers and professor's names.

5. Pick up Memos to Professors from Catherine Fabio at an agreed-upon time and date

6. Sign and date each memo

7. Take Memos to each of your professors for their signatures.

8. Meet with each of your professors to discuss the logistics of the accommodations granted

9. Return signed accommodation Memos to Catherine Fabio

## Important Dates to Remember

You may begin requesting disability-related accommodations for the Spring 2009 semester as early as **January 5, 2009.**

The deadline for requesting disability-related accommodations for the Spring 2009 semester is **February 6, 2009**. All requests submitted after that date will be granted on a case-by-case basis, as time and resources allow. It is in your best interest to make an appointment for disability-related accommodations during the first two weeks of the semester, or if possible, during the holiday break.

It can take as long as **two weeks** from the time of your request, to make a determination and provide you with the appropriate Memos for your professors. Please plan accordingly. Accommodations are not retroactive.

**MASSART**

MASSACHUSETTS COLLEGE
OF **ART AND DESIGN**

## A Reminder about the Process of Requesting Accommodations

*Accommodation requests do not carry forth from semester to semester.* Students requesting accommodations must make their requests prior to or during the first two weeks of *each* semester.

Ways to speed up the process

1. Obtain your documentation materials as soon as possible (see checked items on previous page). If you're not clear about the documentation you need, or if you have other questions, please contact Catherine Fabio.

2. Be certain to provide your clinician with the *guidelines for documentation* or the *Mass Art Medical Questionnaire* (posted on our website). Incomplete documents may result in delays in processing your requests. If you cannot access the website, please contact Catherine Fabio; she will mail or email a copy to you.

3. Set an appointment with Catherine Fabio (617-879-7958; Catherine.fabio@massart.edu) as soon as you have your documentation materials.

4. Come to your scheduled appointment with Catherine Fabio on time, with your course schedule in hand. If you have course syllabi, bring that as well.

We—the administrators, faculty and staff of Mass Art are committed to meeting the needs of all students and are confident that these policies will help us to achieve this goal.

With kindest regards,

Catherine Fabio,
Learning Specialist

# STUDENTS WITH DISABILITIES

The faculty, staff, and administration of Massachusetts College of Art and Design are committed to fostering the academic, personal, and professional growth of our students. We are especially committed to ensuring that students with documented disabilities, as defined under the Americans with Disabilities Amendments Act of 2008 (ADAAA), are provided equal access to all campus resources and opportunities.

MassArt recognizes and respects federal laws prohibiting disability discrimination. We take our obligation seriously and strive to meet the needs of students with documented disabilities in the most appropriate ways possible. It is our goal to serve students in ways that not only level the proverbial playing field, but also promote development of self-advocacy skills and strategies to overcome adversity in order to promote life-long learning and academic, personal, and professional success.

Self-Identification process

According to the ADAAA, students seeking services and/or accommodations must first self-identify themselves to the appropriate disability-related person or department at the school. Parents, guardians, former guidance counselors, and clinicians cannot self-identify for a college student over the age of 18. He/she must self-identify on his/her own.

The most efficient way to self identify is to do the following:

1. Secure appropriate documentation from your doctor/clinician. To speed the process, please provide your clinician with the appropriate documentation guidelines required by Mass Art.

2. Contact Mercedes Evans, Director, Civil Rights Compliance and Diversity MassArt, Tower 815, 621 Huntington Avenue, Boston, MA 02115, (617) 879-7060 mercedes.evans@massart.edu.

3. Complete the ADAAA form (available in the Office of Civil Rights Compliance and Diversity, or the Registrar's Office, or it can be mailed to you). Return the completed form to Mercedes Evans, along with the appropriate supporting documentation.

4. Catherine Fabio, MassArt's learning specialist ((617) 879-7958, cfabio@massart.edu), will examine the documentation and make a decision about the appropriateness of the accommodations request. You may be asked to come in for a clinical interview and/or to provide additional information.

5. Students meet with Catherine Fabio each semester in order to write memos to professors and to discuss the student's and the institution's rights and responsibilities.



EXHIBIT D

# HOW TO REQUEST ACCOMMODATIONS

Once a student self–identifies and provides the appropriate documentation, he or she will meet with the learning specialist, Catherine Fabio. Catherine will interpret the documentation in order to 1) determine the student's eligibility for accommodations under Federal ADAAA guidelines; 2) determine reasonable and appropriate accommodations, 3) determine the student's strengths and weaknesses in order to provide additional support that may allow the student to develop strategies for academic, personal and professional growth, and 4) write memos to professors where classroom accommodations are requested (Note: students must pick up and deliver these memos *each* semester).

The student and specialist will decide together which accommodations or services will be utilized. Accommodations must be requested well in advance of their need and can not be implemented retroactively.

The student will also be encouraged to meet consistently with the learning specialist in order to evaluate and modify strategies.

(Note: Requests for accommodations/services/auxiliary aids will be granted on the basis of their appropriateness to the situation. Having a disorder and/or having had accommodations in other settings does not guarantee the student will receive such services/accommodations/aids at MassArt. Having a clinician make recommendations about specific accommodations does not guarantee the student will receive these accommodations.)

Subject to Revision

Revised 12/18/08

Medical disclosure questionnaire [PDF]

Efforts to assist Mr. Jorge Maisonet

In accessing Disability-related Services at

Massachusetts College of Art and Design


Submitted by Catherine Fabio, Ed.M.

Learning Specialist,

Massachusetts College of Art and Design


Submitted in response to his allegations that I did not make

adequate efforts to meet his needs during the fall, 2008 semester.


Submitted

February 24, 2009     EXHIBIT E

MCA   689

1

# Statement of Refutation

This document serves to refute the accusation by Mr. Jorge Maisonet, student at Massachusetts College of Art and Design, that I have discriminated against him. I have not acted in a discriminatory way. I take my profession seriously, and stand by the ethics of my training, and abiding by the Ethical Code of Principles and Code of Conduct set by the American Psychological Association (2002).

The following pages include a chronologically ordered series of events related to my interactions with Mr. Maisonet, as well as my interactions with College administrators and staff regarding Mr. Maisonet. The attached documents not only support my refutation of Mr. Maisonet's accusation, but also reflect the fact that Mr. Maisonet failed to follow the proper accommodations review process, which was explained in detail to him, during his intake on September 3, 2008. He also received a letter (mailed December 19, 2008), which clearly described the accommodations review process.

College administrators and staff cited in this refutation, include Dan Szabo, Director of Advising; Jean Wallace, Assistant Director of Advising; Julia Lev-Rosenfeld, psychotherapist affiliated with the College's Counseling Services; Lyn Fallo, Administrative Assistant in the Department of Liberal Arts; and Mercedes Evans, Civil Rights Compliance and Diversity Officer. I communicated with each of these individuals throughout the semester, in an effort to not only address Mr. Maisonet's possible disability-related needs, but in addressing is health and well-being as well.

I take the charge of discrimination seriously and am sadden that Mr. Maisonet experienced our interactions in this way. However, in examining the attached evidence, it becomes clear that my actions reflected 1) my desire to work with Mr. Maisonet, in accommodating his needs; and 2) my genuine concern for Mr. Maisonet's well-being. Had Mr. Maisonet followed through in his responsibility to come to my office *at the designated times* or contacted me and clearly informed me about his needs, he may have had a much more productive experience.

Respectfully submitted,


Catherine Fabio, Ed. M.
Learning Specialist, Massachusetts College of Art and Design

MCA    690

# Sequence of Events

<u>Tuesday, September 2, 2008</u>

1. I received phone message from Jorge Maisonette. He said he'd like to meet. He left his phone number and asked me to return his call.

2. I returned his call. We scheduled an appointment for the following day. I instructed student to bring any documentation he may have and to also bring his course schedule for the current semester.

<u>Wednesday, September 3, 2008: 2:15 PM</u>

1. I met with student. Student did not have documentation. Student said Julia Lev-Rosenfeld diagnosed him at the counseling center. Stated that he had seen her consistently last semester for ADHD counseling and that he planned to continue. I said I thought that was a good idea and encouraged him to make an appointment with her as soon as possible, before she booked up for the semester.

2. I telephoned Julia Lev-Rosenfeld (of Counseling Services) and requested his documentation.

3. I instructed student to come back in one week (September 10, 2008), which would allow me enough time to secure the documentation, read it, and determine the appropriate accommodations, if any.

<u>Sept 10, 2008: 1:15 PM</u>

1. Met with student for our scheduled appointment

2. He presented letter from another college that had permitted him accommodations in the past.

3. I explained that this was not appropriate documentation, but that in the interest of time and fairness—I would accommodate his requests this semester, but that I would need appropriate documentation, if he were to request accommodations in the future.

4. I explained to the student that he would need to provide either a neuropsychology report or a letter from a psychiatrist documenting a history of ADD/ADHD, including a diagnosis code.

MCA   691                    3

5. Student said he understood.
6. We discussed his accommodations. (He requested extended time for tests and projects).

7. The student provided his course schedule. I instructed the student to come back the next day to pick up the letters.

8. Student agreed to return on September 11th at 12:45 PM, to review letters and sign them. I told him he could then take them to his faculty to sign and then bring the letters back to me.

9. I contacted Julia-Lev Rosenfeld again, regarding Jorge 's (and other student files I was looking for) file.

## September 11th, 2008

12:45 PM: Student did not show up.

## Sometime in September

I saw Julia Lev-Rosenfeld, unexpectedly, on campus. I asked if she had heard from Jorge, stating that I was concerned and wondered if she'd let him know that. I told her he never came to pick up his letters. Julia stated that she hasn't seen him and that he often doesn't follow through. I said I wondered if he's okay. She indicated that she would follow up.

## Thursday, October 23, 2008

1. Student called to request an appointment with me.

2. I stated that I was concerned about him and was glad he called. I told him I still have his letters and have been waiting for him to come and pick them up. I scheduled him for the next day, Friday October 24th at 1:15 PM.

## Friday, October 24, 2008

1. 11:13 AM: I receive telephone message from Jorge Maisonet
Student stated in message that he will need to cancel appointment. Said he was "going to emergency room at hospital"

2. I called student at the number he provided and left message asking how I can help (does he need anything from me or counseling center?).

3. 12:00 PM: I called Julia Lev-Rosenfeld to let her know Jorge was in hospital. Left voice mail message.

## MONDAY OCTOBER 27, 2008

1. 9:13 AM: Received phone message from Jorge Maisonet
   "I will be out from school until Thursday"
   781-605-1678
   Couldn't make out the entire message. He was speaking very softly.

2. I returned his call. Spoke with student voice-to-voice:
   Student stated he wanted to talk with me about changing the letters so they also say something about writing assignment extensions. Stated he went to hospital on Friday. Had 2 surgeries over the weekend. Will be out until Thursday, October 30, 2008. He said he sent emails to professors telling them this.

3. I told student I would edit the letters and reprint them. I told him he could pick them up on Thursday, October 30th at 11:30 AM.

4. 1:05 PM Voice mail message from Julia L-R.
   Responding to my phone message—"Haven't heard from Jorge this semester. So, not appropriate for me to contact him. If you think he needs counseling though, please urge him to contact me. Thanks."

## Thursday, October 30th, 11:30 AM
Student did not show up to pick up newly revised memos.

## Friday, October 31st 2008

1. I asked Linda Fallo, Administrative Assistant in the Liberal Arts Office, if she'd give letters to student when he came in. I was going to be at the COF Conference all day and wanted to be certain the student could get his letters. Lynn agreed. I signed the letters and put them in a sealed envelope with his name on it. I brought the envelope to Lynn Fallo.

2. I telephoned student. Left voice-mail message telling him he could pick up the letters from Lynn Fallo in the Liberal Arts office on the fifth floor.

## November 5, 2008
1. Received email from Dan Szabo in Advising; the email was also cc'd to Mercedes Evans.

Catherine:
Jorge Maisonet was meeting with Jean and saying that he's concerned that his

letters haven't gone out (this is secondhand mind you). But he was unwilling to make another appointment with you. So I suggested to Jean that he talk to Mercedes. Just wanted to give you a heads up. He seems like a troubled person, in my past encounters with him.

Dan Szabo
Academic Advising
Massachusetts College of Art and Design

2. I replied to Dan's email as follows:

He never showed up to pick them up. I tried contacting him several times. I contacted Julia L-R in the counseling center. Last Friday, I finally called him again and left a message saying he could pick them up in the Writing Center, because I would be at a conference all day.

I'm in a meeting now. Will write more later.
C.

3. Mercedes Evans also emailed a response:

Daniel and Catherine,
I have seen Jorge in passing several times and he has not said anything to me.
Mercedes

4. As I had mentioned I would in my earlier/briefer, email to Dan, I responded more fully to Dan, regarding the situation with Jorge. I also cc'd Mercedes Evans, Jean Wallace (who had received the original complaint) and Michele Furst

From: Ms. Catherine Fabio
Sent: Wednesday, November 05, 2008 4:09 PM
To: Daniel Szabo; Ms. Catherine Fabio
Cc: Mercedes Evans; Michele Furst; Jean Wallace
Subject: Re: student

Hi Dan,
Attached, please find the letters I wrote for this student back on September 10th. He never picked them up. He stood me up at our appointment for him to read them, okay them and sign them. I called him three times and also called JLR in the counseling center because he had been working with her last year. I even requested JLR reserve one of her weekly hours (of which she only has 8) for him.

He never showed up for her either, even though he requested the first

week of school that he be in her caseload.

Finally, about two weeks ago, he showed up at my door asking for letters. He decided he wanted different accommodations. So, I rewrote the letters and set another appointment with him to come and sign them and take them to the professors (He showed up at a time when I was meeting with other students so couldn't write the letters right then and there).

The day he was supposed to pick up the letters (Friday, October 24th) he called and cancelled, saying he was in the ER and was going to have surgery. I called and left a message for him to see if everything was okay. No response.

I called JLR to let her (and the health center) know he was in the hospital as well. That 's when she said she had not seen him all semester. She filled his space with another student.

I then called him the following Monday (October 27th). He said he had had 2 surgeries and would not be on campus until Thursday. I told him he could pick up the letters on Thursday. He never showed up. The following day, Friday, I left the letters with Lyn Fallo in the Writing Center because I was at the COF Conference most of the day. He never picked up the letters.

I'm attaching the original ones now, so you can see that his letters were ready on September 10, 2008.

Please let me know if you have any more questions.

Thanks for letting me know he came to see you.

Kindly,
Catherine


**Friday, December 19, 2008: 4:00 PM mail pick up**

Sent letter to Jorge stating the deadlines for accommodation requests for the spring semester (February 6, 2009), and stating that his file is still missing appropriate documentation of his disability. Letter also stated that without the documentation he would not be permitted accommodations.

I did not receive a response from Mr. Maisonet, nor did he provide the requested documentation.

**Friday, February 13ᵗʰ, 8:45 AM**

    Sent email to Jean and Dan in Advising Office, following up regarding
students they have referred and/or students they have contacted me about
in the past. I included Jorge in this list.

    Hi Jean, Dan,
    Just following up on a few students I know you have been following in the past.

    Jorge M.-- I have not heard from him since November of last semester. I sent (as I did all
    students registered with Mercedes) a letter, on December 19th, letting him know what
    is missing from his documentation file and inviting him to come in for an appointment. I
    have not heard back from him.

**Friday, February 13, 2009**

Received notification from Mercedes Evans that student filed a claim asserting that I
discriminated against him.

**Michele Furst**

Michele and I are happy to speak with you. I also think this is a shared feeling, and that it is legitimate to raise it in the group meeting.

Thanks,

Johanna

-----Original Message-----
From: Catherine Fabio
Sent: Tuesday, June 16, 2009 5:18 PM
To: Johanna Branson
Cc: Michele Furst
Subject: RE: Meeting

Hi Johanna,

I've been wanting to talk with you and Michele about this particular student. I'm genuinely worried about my safety. I know that's not necessarily what you want to discuss in the meeting-- but I've been concerned for a while now. I wasn't sure if I should address this with you and Michele or if I should go to Dwayne. Your email about a meeting regarding this student prompted me to go ahead and let you know of my concern. Perhaps, in a separate meeting, we can begin a dialogue about how I might protect myself in these kinds of situations. (My colleague at BU had a panic button installed under her desk; angry, acting-out students seem to be more present on campuses than ever...).

I look forward to talking with you and/or Michele.

Catherine

---

Johanna Branson
Senior Vice President for Academic Affairs

Massachusetts College of Art and Design
621 Huntington Avenue
Boston Massachusetts 02115

617 879 7365
617 879 7360 (fax)



MCA  464

# MASSART

**MASSACHUSETTS COLLEGE
OF ART AND DESIGN**

Completing this form is optional. However, if you wish to request accommodations, you must complete this form.

Newly accepted students must submit this form ASAP

What is "disability"? The Americans with Disabilities Act (ADA) protects qualified individuals with a physical or mental impairment that substantially limits a major life activity (performing manual tasks, walking, seeing, hearing, speech, learning, etc.) Documentation of the disability must accompany this request form.

Name Jorge A. Maisonet

Program: ☑ undergraduate ☐ graduate ☐ certificate/Post-baccalaureate ☐ transfer/exchange

Mailing address 12 Auburn Street, Apartment #2

City Malden     State MA     Zip Code 02148

Phone Number(s) 617-694-0594     E-mail address jorgemaisonet@yahoo.com

Description of disability: Attention Deficit Disorder and Verbal Learning Disorder

Request for accommodation. Please state as briefly and clearly as possible. Use reverse side if necessary:
1. Assignments in writing. 2. Extended time on assignments, exams and quizzes. 3. Have the option to take exams outside of class. 4. Tape or digital recording of classes. 5. Class books offered on audio and/or digital format. 6. Have classes held in classrooms and not hallways where it is distracting. 7. Have in writing how I am being evaluated or graded on assignments, exams, critiques, etc. 8. Be provided with individual grades on assignments, exams, quizzes, critiques, etc.

State Aid Eligibility. If you are eligible for state aid and are registered with the appropriate agency, please provide:

Agency name

Contact person     Phone Number

The above information is complete and accurate to the best of my knowledge and belief. I understand that I may be asked to supply additional information in order for Massachusetts College of Art to fulfill this request. I authorize the use of my name in the resolution of this request and disclosure of this document to appropriate administrators.

Signature of student *(signature)*     Date 07-16-09

Signature of parent (optional but required for students under age 18)

Please return this from along with documentation to:
Massachusetts College of Art and Design
Mercedes S. Evans – Director, Civil Rights Compliance and Diversity
8th Floor-Tower Building
621 Huntington Avenue, Boston, Massachusetts 02115-0882
Phone (617) 879-7060   email: msevans@massart.edu

Received by

Date

# EXHIBIT G

MCA 631

621 HUNTINGTON AVENUE BOSTON, MA 02115 USA  T 617 879 7000  F 617 566 4034  MassArt.edu

**MASSART**
MASSACHUSETTS COLLEGE
OF ART AND DESIGN

CONFIDENTIAL

Massachusetts College of Art and Design Medical Disclosure Questionnaire

In order to be valid as documentation of a current disability, as defined by the ADA Amendments Act of 2008 (ADAAA), this form must be completed by a licensed clinician *currently treating the student listed below, for the diagnosis identified in this document.*

*The licensed clinician is required to complete this form in its entirety, sign and date it (on the last page), and put it in a sealed envelope with his/her signature across the seal. Incomplete items and items submitted incorrectly may result in delays in processing the student's request. Massachusetts College of Art and Design reserves the right to contact the clinician named below, to clarify facts or obtain further information.*

**Date:**

**Student Information**

Full Name (please print):

**Clinician's Information**

Name (please print):

Address:

Phone number

State Licensure/Certification #                **EXHIBIT** H

Area of Medical Specialty:

621 HUNTINGTON AVENUE BOSTON, MA 02115 USA  T 617 879 7000  F 617 566 4034  MassArt.edu

**MASSART**
MASSACHUSETTS COLLEGE
OF ART AND DESIGN

*Dear Clinician,*
*Your patient (named above), a student at the Massachusetts College of Art and Design, is*
*requesting disability-related services and/or accommodations. This medical questionnaire*
*is designed to assist the college in making determinations about the reasonableness and*
*appropriateness of your patient's request. The information you provide will serve as*
*formal medical documentation, and as such, will remain confidential.*

Diagnosis/description of disability (*Please provide written diagnosis and full ICD or*
*DSM-IV-TR code*):

1. The extent of the illness or disorder is
   () Mild
   () Moderate
   () Severe

2. Initial Date of diagnosis:

3. Date of last clinical contact:

4. Expected duration of the disorder or illness noted above is:
   () less than six months
   () Long term (6-12 months)
   () Permanent/Chronic

5. Which (if any) area(s) of the student's life are most affected by this impairment?
   ()      Breathing
   ()      Eating
   ()      Sleeping
   ()      Seeing
   ()      Hearing
   ()      Reading
   ()      Writing
   ()      Interacting socially
   ()      Communicating verbally
   ()      Walking/physical mobility
   ()      Painting/drawing
   ()      Typing/keyboarding
   ()      Other (Please describe)

621 HUNTINGTON AVENUE BOSTON, MA 02115 USA  T 617 879 7000  F 617 566 4034  MassArt.edu

**MASSART**
MASSACHUSETTS COLLEGE
OF ART AND DESIGN

6. Describe the symptoms of this diagnosis that student experiences:

7. Please describe the functional impact of the above-named symptoms.

8. Describe clearly how *each* of the above symptoms limit the student's functioning in the *academic* setting:

9. What is the frequency and duration of symptoms of the student's condition?
   () Daily
   () 1x per week
   () 1-3 x per week
   () 1x per month
   () Seasonal
   () None—symptoms are controlled with medication
   () Other (please describe)

10. This illness/disorder _____ affects the student's ability to participate in academic pursuits.
    () Mildly
    () Moderately
    () Substantially

11. Assessment instrument and results: (*please briefly describe the procedure used to establish the diagnosis*):

621 HUNTINGTON AVENUE BOSTON, MA 02115 USA  T 617 879 7000  F 617 566 4034  MassArt.edu

**MASSART**
MASSACHUSETTS COLLEGE
OF ART AND DESIGN

12. Long-term recovery (and if appropriate, medication) plan:

13. Current compliance with the medical plan:

14. Does the student use a wheelchair?
    () Yes     _____ Manual?     _____Electric?
    () No

15. Does the student drive an adapted van/car ?
    () Yes
    () No

16. Please list any equipment the above-named student may need to use (Hoyer lift, transfer board, service animals, etc.) in order to gain equal access to learning and other opportunities at Massachusetts College of Art.

17. Does student use personal care assistance?
    () Yes**
    () No

    **If yes, how many hours per day are currently required?

18. Please describe student's functional gross motor and manual dexterity abilities/ limitations in the following areas:

    o  Personal care: (bathing, dressing bowel/bladder care)

    o  Activities of daily living  (meal preparation, eating, laundry, housekeeping

621 HUNTINGTON AVENUE BOSTON, MA 02115 USA  T 617 879 7000  F 617 566 4034  MassArt.edu

**MASSART**
MASSACHUSETTS COLLEGE
OF ART AND DESIGN

    o  Maneuvering a wheelchair

    o  Manual dexterity/writing

    o  Ability to bend and lift/carry/haul heavy objects

19. Please explain, briefly, any program for physical therapy or for treatment plans that student participates in *during established class hours* (number of hours/sessions)

20. History of Hospitalization related to this disorder/illness:

21. Does the person create a threat to him/herself or to others?
        () Yes**
        () No

  ** If yes, please explain.

## OPTIONAL
*Please complete this section so the learning specialist and/or the director of civil rights and diversity at Massachusetts College of Art and Design my better serve the student's academic, personal and professional development.*

1.    Are there any psychological issues or other adjustment concerns that would be helpful to the Learning Specialist at Mass Art to know, in order to support this student's academic and social experiences at Mass Art?
    () Yes **
    () No

    **If yes, please describe:

621 HUNTINGTON AVENUE BOSTON, MA 02115 USA  T 617 879 7000  F 617 566 4034  MassArt.edu

**MASSART**
MASSACHUSETTS COLLEGE
OF ART AND DESIGN

2.    Is this student aware of any realistic limitation regarding how the impairment may impact their academic performance? Please explain.

3.    Current medications (dosage and side effects)

4.    Please provide any additional information you believe might be useful.

## REQUIRED

Please sign and date this form. Enclose it in a letterhead envelope, seal it and sign your name across the seal.

Clinician's Signature: _____

Date: _____